**ALIOTO v. IMAHASHI et al.**

No. 9482.

Circuit Court of Appeals, Ninth Circuit.

Nov. 8, 1940.

---

Cluff & Bullard, and Alfred T. Cluff, all of Los Angeles, Cal., for appellant.

Farnham P. Griffiths, Harold A. Black, and McCutchen, Olney, Mannon & Greene, all of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an interlocutory decree in admiralty holding at fault appellant's tuna fishing boat, The Dependable, for a collision between it and another tuna fishing boat, The Taiyo. The amount of damage remained for further determination.

The collision occurred at a time when both vessels were fishing for tuna on the Outer Gorda Bank, about six miles southeast of Gorda Point and twenty-two miles northeast of Cape San Lucas, at the end of the Lower California Peninsula, on the morning of July 16, 1938 at about 10 o'clock a. m. The weather was clear, there was no wind, and the sea was calm with a slow swell. On that morning both vessels had previously successfully fished schools of tuna. With respect to the rights of tuna fishing boats fishing on the same ground and seeking to take from a certain school approached by the boats, it is admitted by both appellant and appellees that "there is a universal and long established custom among tuna fishermen in waters of the Pacific Ocean, generally known to and observed by such fishermen, to the effect that whenever a school of fish is sighted by two or more vessels, the first vessel to come up to said school has the prior right to fish said school, and is entitled to fish the same exclusively, unless the school is large enough to permit of it being fished by other vessels with safety and without interfering with the fishing of the first vessel, and in any event the vessels subsequently arriving at such school are bound to keep clear of the first vessel and avoid interfering with her and her fishing activities."

The major consideration upon which the district court based its decision in favor of The Taiyo was the court's impression that the master of The Dependable had admitted in his testimony that The Taiyo had first reached a school of tuna and had begun fishing on that school while The Dependable was approaching to take from the same school. The district judge found in his opinion that Captain Alioto of The Dependable said, "When we saw the fish we headed for them at 8½, I think. I looked around and saw the Taiyo headed for the school of fish, too, towards our stern on our starboard. She was catching up; when the Dependable was within a short distance of the fish the Taiyo was at the school of fish and was throwing bait." If such an admission had been made by the Captain of The Dependable the interlocutory decree of necessity would have to be for The Taiyo.

An analysis of Captain Alioto's testimony shows no warrant for the finding of the district court that he had admitted The Taiyo first had reached the school of fish towards which The Dependable was proceeding. On the contrary, his testimony is that The Taiyo had stopped before reaching that school of tuna and was seeking to raise other fish by the practice, in tuna fishing, of throwing live sardines to bring the tuna to the surface. Captain Alioto's testimony is that after starting this process of "chumming" for these other tuna, The Taiyo started her engines and was proceeding toward the school of tuna which The Dependable had sighted and towards which she was proceeding.

The testimony below was entirely by deposition and the case in this court is a trial de novo with the lighter presumption in favor of the decision of the lower court stated in The Ernest H. Meyer, 9 Cir., 84 F.2d 496, 501. Since the mistake of the district court with regard to an admission of The Dependable's captain that The Taiyo had first reached the school of tuna, and hence that it was The Dependable's duty not to interfere, goes to the essence of its decision, we consider the evidence de novo, free of any presumption in favor of the interlocutory decree appealed from.

The testimony of the opposing ships is as completely contradictory as it was in the case of The Ernest H. Meyer, supra. The Taiyo claims that she had first reached the school of tuna, was proceeding at her slowest diesel speed, about 1½ miles per hour, was throwing over sardines, with the

men standing on the fishing racks lowered over the starboard side of the vessel, their poles in their hands, about to cast the lured hooks which the tuna take when the school rises to capture the sardines. Her captain, Ginzo Imahashi, gave as his first account of the collision that he sighted The Dependable off his port quarter on a course crossing his bows at an acute angle, and that he gave a full reverse on his diesel when The Dependable's bow was crossing his course line ahead; that The Taiyo under the reversing power backed in the water a ship's length, 110 feet, and, while retreating, The Taiyo executed a left rudder maneuver which threw The Dependable's stern to her starboard across the retreating Taiyo's bow, a maneuver not unlike what, in the vernacular, is called a "side-swipe" by one automobile against another. He later attempted to correct his testimony as to the ship's length that he had backed in the water from his slow ahead at the time he saw The Dependable on the course crossing his bow, but still insisted that The Taiyo was moving astern in the water at the time of the collision. The engineer of The Taiyo, who had come up from the engine room shortly before the collision and was very vague as to the maneuvers of the two vessels, thought The Taiyo was moving ahead in the water but almost stopped.

The Dependable's contention is that she was approaching the school which was observable in a general easterly direction from her, moving slowly easterly with The Taiyo on her port side, somewhat astern, and moving in the direction of the same school. That before reaching the school sought by The Dependable, The Taiyo stopped her engines and began chumming for other fish than those sought by The Dependable. The Dependable proceeded at about 8½ knots through the water until a short distance from the school, when she stopped her engines and coasted into the school and began to throw over her sardines to which the tuna were rising on both sides of the vessel. When The Dependable had reached the school, and still having some forward momentum, The Taiyo was seen to have started up from where she had been chumming for the other tuna and approached the school in which The Dependable was chumming. Instead of keeping out of the way as an overtaking ship should, she rammed The Dependable below the water line on her starboard quarter guard at about right angles.

We thus have a conflict of testimony, particularly with regard to the angle at which the collision occurred. The Taiyo claims that the collision was caused by the throwing of the stern of The Dependable to the right and towards The Taiyo by a left rudder movement by which she hit a glancing blow on the bow of the retreating Taiyo. If this were correct, the scars on the Dependable should show a scraping movement on her guard and bulwarks from forward to aft. If The Dependable's account be correct, the scars would show a square on blow of The Taiyo on The Dependable's guard and bulwark.

The photographs of the scars on The Dependable sustain her contention rather than those of The Taiyo. They show a square on blow on the guard of The Dependable which in her then trim was just below the water line. The guard was some 6½ inches thick and pressed in for 3 or 4 inches. Directly above the point of impact is a drain pipe through the bulwark which was untouched in the collision. It is admitted by The Taiyo's captain, who dove under water to inspect the injury to his vessel some time before she sank, that the impact on the guard of The Dependable had twisted the stem on The Taiyo to her right. By this pushing over of the stem above the water line it missed the protruding drain pipe over the point of impact on the guard and caused The Taiyo's upper stem to strike on the bulwarks of The Dependable just to the right of the protruding drain pipe. This scar like that on the guard rail shows no scraping motion as would the side-swiping at an acute angle turning movement of The Dependable described by The Taiyo's captain. Had there been such acute angle approach and scraping, the protruding drain pipe would have been scraped and probably torn off in the process.

We accept the testimony of The Dependable that she was proceeding at a slow speed on her forward momentum after stopping for the school of tuna, that the right angle blow heeled her over from her starboard to port and that the scars appearing about 6 feet abaft the point of impact on a skiff hung out on the starboard side of the slow moving Dependable were caused by her return roll which brought the skiff against The Taiyo's bow.

■ In view of the inherent improbability of The Taiyo's account and the support the real evidence of the scars on The Dependable gives to the not improbable

story of The Dependable, we hold that The Taiyo was in fault for the collision.

The interlocutory decree is reversed and an interlocutory decree here given for appellant, and the cause remanded for further proceedings in the district court.

Reversed.